IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

FILED

February 1, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| CHARLES WALTON WRIGHT, | ) | |
| | ) | FOR PUBLICATION |
| Appellant, | ) | **Filed: February 1, 1999** |
| | ) | DAVIDSON CRIMINAL |
| | ) | |
| Vs. | ) | HON. WALTER C. KURTZ, |
| | ) | JUDGE |
| | ) | |
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee. | ) | No. 01-S-01-9709-CR-00196 |

**For Appellant:**

Donald E. Dawson
Post-Conviction Defender
Nashville, Tennessee

**For Appellee:**

John Knox Walkup
Attorney General & Reporter

Michael E. Moore
Solicitor General

Amy L. Tarkington
Assistant Attorney General
Nashville, Tennessee

At Trial:
Victor S. Johnson
District Attorney General

John Zimmerman
Assistant District Attorney
Nashville, Tennessee

# O P I N I O N

COURT OF CRIMINAL
APPEALS AFFIRMED.

ANDERSON, C.J.

We granted this appeal to determine whether the appellant's due process rights were violated when the lower courts dismissed his post conviction petition as time-barred by the three-year statute of limitations since the asserted violation of Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), did not arise until after expiration of the three-year statute of limitations.

The Court of Criminal Appeals affirmed the trial court's dismissal of the petition after concluding that the appellant's interest in asserting and litigating the issue did not outweigh the State's interest in preserving final judgments and preventing the litigation of stale claims.

We conclude that the exculpatory evidence issue was a "later-arising" claim in that it did not arise until after the post-conviction statute of limitation began to run. We further conclude, however, that the appellant's interest in litigating the later-arising claim at this stage of the proceedings did not outweigh the State's interest in preserving final judgments and preventing the litigation of stale daims. We therefore affirm the Court of Criminal Appeals' judgment.

**BACKGROUND**

In April of 1985, the appellant, Charles Walton Wright, was convicted of two counts of premeditated first degree murder. According to the evidence at trial, Wright shot and killed two victims, Gerald Mitchell and Douglas Alexander, during the course of a drug transaction. He was sentenced to life imprisonment for the killing of Mitchell and to death by electrocution for the killing of Alexander. The convictions and sentences were affirmed by this Court on direct appeal. State v. Wright, 756 S.W.2d 669 (Tenn. 1988), cert. denied, 488 U.S. 1034, 109 S. Ct. 848, 102 L. Ed. 2d 979 (1989). The Court denied Wright's petition for rehearing on August 29, 1988.

In May of 1989, Wright filed his first petition for post-conviction relief, which was denied by the trial court after an evidentiary hearing. The Court of Criminal Appeals affirmed. Wright v. State, No. 01C01-9105-CR-00149 (Tenn. Crim. App., Nashville, Apr. 7, 1994). This Court denied Wright's application for permission to appeal on September 12, 1994, and the United States Supreme Court subsequently denied Wright's petition for certiorari, 513 U.S. 1163, 115 S. Ct. 1129, 130 L. Ed. 2d 1091 (1995).

Wright filed the present post-conviction petition on January 27, 1995,[1] alleging, in part, that the prosecution had violated his state and federal rights to due process by withholding exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Among other things, Wright claimed the prosecution suppressed evidence demonstrating that he had a mental illness; that he did not kill Alexander; that other persons were at the scene of the killing; that a heated argument had occurred at the scene; that Mitchell's girlfriend had committed the killings after discovering that Mitchell and Alexander were homosexual lovers; that Mitchell had a "drug connection" in Nashville; and that the victims were engaged in drug trafficking with two other individuals at the time of the shooting.

Although the three-year statute of limitations then applicable to post-conviction suits had expired three years after his conviction became final, see Tenn. Code Ann. § 40-30-102 (1990),[2] Wright argued that the exculpatory evidence issue did not arise until the decision in Capital Case Resource Center v. Woodall, No. 01A01-9104-CH-00150 (Tenn. App., Nashville, Jan. 29, 1992). In that case, the Middle Section of the

---

[1] This petition is actually the petitioner's third. The second, filed pro se on August 29, 1991, was dismissed by the trial court without a hearing. Although no appeal was filed at that time, the appellant sought to resurrect that appeal in the present case. The Court of Criminal Appeals properly ruled it was untimely and refused to review the issues therein.

[2] Now codified in Tenn. Code Ann. § 40-30-202 (1997), the statute of limitations for post-conviction under the present Post-Conviction Procedure Act is one year.

Court of Appeals held that police investigative files concerning a case under collateral attack were not exempt from disclosure under the Tennessee Public Records Law.

The trial court dismissed the petition without a hearing because it was filed after the three-year statute of limitations. Tenn. Code Ann. § 40-30-102. The Court of Criminal Appeals agreed that the grounds for the exculpatory evidence were not available until the decision in Woodall was released on January 29, 1992, yet held that the suit was properly dismissed because Wright's interest in having the issue heard did not outweigh the State's interest in preserving final judgments and preventing the litigation of stale claims. We granted Wright's application for permission to appeal and now affirm.

## ANALYSIS

At the time Wright filed this post-conviction suit in January of 1995,[3] the Post-Conviction Procedure Act provided:

> [a] prisoner in custody under sentence of a court of this state must petition for post-conviction relief under this chapter within three (3) years of the date of the final action of the highest state appellate court to which an appeal is taken or consideration of such petition shall be barred.

Tenn. Code Ann. § 40-30-102 (emphasis added).

Applying this statute to this case, the three-year period began to run when this Court denied Wright's petition for rehearing of his direct appeal on August 12, 1988; thus, Wright's petition filed in January of 1995 was more than three years after the expiration of the statute of limitations. Wright, however, citing Burford v. State, 845 S.W.2d 204 (Tenn. 1992), argues that since the exculpatory evidence claim was

---

[3] Because the petition was filed prior to May 10, 1995, the former Post-Conviction Procedure Act applies in this case. Tenn. Code Ann. §§ 40-30-101 to -124 (1990) (repealed 1995) (now codified Tenn. Code Ann. §§ 40-30-201 to -222 (1997)).

unavailable until the decision in Woodall, his case falls within an exception to the three-year limitations period.

In Burford, the petitioner's post-conviction suit in Trousdale County challenging his sentencing as a persistent offender was filed after the statute of limitations; he argued, however, that he could not raise the issue until prior convictions sustained in Wilson County, which had been used to enhance his sentence in Trousdale County, were set aside in a separate post-conviction suit. We recognized that the application of the statute of limitations must comport with due process:

> [B]efore a state may terminate a claim for failure to comply with procedural requirements such as statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner. The question, then is "whether a state's policy reflected in the statute affords a fair and reasonable opportunity for . . . bringing . . . suit." In other words, the test is whether the time period provides an applicant a reasonable opportunity to have the claimed issue heard and determined.

Id. at 208 (citations omitted). Moreover, given the unusual procedural facts confronting the petitioner, we concluded that "under the circumstances of a particular case, application of the statute [did] not afford a reasonable opportunity" to litigate an issue. Id.

In a later case we clarified Burford by recognizing that "due process prohibits the strict application of the post-conviction statute of limitations to bar a petitioner's claim when the grounds for relief, whether legal or factual, arise after . . . the point at which the limitations period would normally have begun to run." Sands v. State, 903 S.W.2d 297, 301 (Tenn. 1995) (emphasis added). We established the following framework:

> (1) determine when the limitations period would normally have begun to run; (2) determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are "later-arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim.

Id. To determine whether a petitioner was denied a reasonable opportunity to present a claim, a court must balance the liberty interest in collaterally attacking the constitutional violations occurring during the conviction process against the State's legitimate interest in preventing the litigation of stale and fraudulent claims. Id.; see also Caldwell v. State, 917 S.W.2d 662 (Tenn. 1996) (also applying Burford and Sands analysis).

We employed this type of balancing analysis in Burford. With respect to the State's interest, we observed that there was nothing stale or fraudulent about the petitioner's claim, that there was no difficulty with the availability of witnesses or the memories of witnesses, and that there was no problem with respect to a groundless claim generating excessive costs. We further stressed "that the petitioner ha[d] a valid claim to have his sentence reduced, and all the [post-conviction] court will have to do is examine the record of the . . . proceedings." 845 S.W.2d at 209. Finally we stressed the significant liberty interest at stake to the petitioner:

> [A]pplication of the statute . . . will deny [Burford] of a fundamental right. If consideration of the petition is barred, Burford will be forced to serve a persistent offender sentence that was enhanced by previous convictions that no longer stand. As a result, Burford will be forced to serve an excessive sentence in violation of his rights under the Eighth Amendment to the U.S. Constitution, and Article I, § 16 of the Tennessee Constitution, which, by definition, are fundamental rights entitled to heightened protection.

Id. Thus, after concluding that Burford's interest in raising and litigating the issue outweighed the State's interest, we held that application of the statute of limitations to bar Burford's petition violated due process. Id. at 209-10.

By contrast, in a 1996 case, the petitioner in Caldwell filed a post-conviction petition in which he challenged an unlawful arrest.[4] After concluding that Caldwell's

---

[4] Like Wright in the present case, Caldwell asserted that the issue was not available until after the Court of Appeals' Woodall decision holding that police investigative files were not exempt from the Public Records Law.

claim was a "later-arising" issue, we turned to the balancing test and contrasted the State's interest with that in Burford:

> [I]t is beyond question that the State interests here are much stronger than in Burford. With respect to the interest in preventing the litigation of stale claims, we note that the events at issue here occurred almost fifteen years ago. Because the officers involved will likely be called to testify regarding the arrest and the ensuing events, there is a real danger that their memories will have faded to such a degree as to make reconstructing the events difficult or impossible. Moreover, there is the possibility that the officers may not even be available to testify, another concern voiced in Burford. Thus, all the dangers inherent in the litigation of stale claims -- which the State has a legitimate interest in preventing -- appear to be present here.

917 S.W.2d at 666 (emphasis added). We also found that the nature of the right asserted in Caldwell -- the right to suppress evidence derived from an unlawful arrest-- differed significantly from the right to be free from an excessive sentence asserted in Burford:

> The right at issue in Burford is a personal trial right of a defendant which goes directly to the justice or integrity of the conviction or sentence. On the other hand, the "right" to exclude evidence gathered as a result of an unreasonable seizure, based as it is on the rationale of deterring police misconduct, is not a personal trial right. And a violation of the constitutional guarantees, if proven, does not necessarily result in a reversal of the conviction.

917 S.W.2d at 667. Accordingly, we concluded that application of the three-year statute of limitations did not deny Caldwell a reasonable opportunity to present the pretextual arrest issue.

Applying this framework to the present case, we find that the three-year statute of limitations began to run when this Court affirmed Wright's conviction and sentence and denied his petition for rehearing on August 29, 1988. The Court of Appeals' decision in Woodall, holding that police investigative files were not exempt from disclosure under the Public Records Law, was released on January 29, 1992. Accordingly, it appears that the exculpatory evidence issue was, in fact, later-arising, under the analysis in Sands and Caldwell.

The critical inquiry is whether, under the facts of this case, application of the three-year statute of limitations effectively denied Wright a "reasonable opportunity" to raise this issue. In making this inquiry, we must balance Wright's interest in collaterally challenging his conviction by raising this constitutional issue against the State's legitimate interest in preserving the finality of judgments and preventing the litigation of stale and fraudulent claims.[5]

We initially observe that the right asserted by Wright -- the denial of due process resulting from the prosecution's suppression of exculpatory evidence -- is a personal trial right directly relating to the justice or integrity of the conviction and sentence. Brady, 373 U.S. at 87, 83 S. Ct. at 1197; State v. Spurlock, 874 S.W.2d 602, 609-10 (Tenn. Crim. App. 1993). It is, therefore, more similar to the liberty interest asserted in Burford than the interest in Caldwell.

The other side of the scale, however, weighs heavily in favor of the legitimate interests of the State. The post-conviction suit filed by Wright was filed ten years after the commission of the offense; nearly six and one-half years after Wright's conviction became final; three and one-half years after the three-year post-conviction statute of limitations expired; and nearly three years after the Court of Appeals decided in Woodall that police investigative files were not exempt from the Public Records Act.

As in Caldwell, this passage of time is directly related to the manner and means of litigating Wright's issue. The availability of critical witnesses and their ability to recall and relate details as to the alleged suppression of exculpatory evidence and the facts of

_____

[5] Although we have not addressed this specific issue, the Court of Criminal Appeals has drawn different conclusions from similar facts and circumstances. E.g., Wooden v. State, 898 S.W.2d 752 (Tenn. Crim. App. 1994) (remanded for hearing to determine whether evidence was exculpatory and if so, whether Burford exception applied); Sample v. State, No. 02C01-9505-CR-00131 and No. 02C01-9505-CR-00139 (Tenn. Crim. App., Jackson, Sept. 30, 1996) (applying Burford exception and remanding for further proceedings on exculpatory evidence); Armstrong v. State, No. 01C01-9311-CR-00403 (Tenn. Crim. App., Nashville, Dec. 8, 1994) (applying Burford exception and remanding for proceedings on exculpatory evidence issue). But see Porterfield v. State, No. 02C01-9611-CR-00388 (Tenn. Crim. App., Jackson, Apr. 2, 1997) (rejecting later-arising exculpatory evidence issue and affirming dismissal of post-conviction petition).

this offense are immediate and significant concerns. Wright's mere allegation that the prosecution suppressed exculpatory evidence does not warrant relief. Instead, Wright must establish that favorable evidence existed, that it was material to the defense, and that it was, in fact, suppressed by the prosecution. Accordingly, as in Caldwell, raising this issue at this stage of the proceedings, would require extensive, possibly expensive litigation. Cf., Burford, 847 S.W.2d at 209 (raising the issue requires trial judge to simply examine the record of the proceedings).

Wright argues that the three-year statute of limitations contained in the former Post-Conviction Act should be applied to later-arising issues. See, e.g., Burford, 847 S.W.2d at 210 (Daughtrey, J., concurring). The State, on the other hand, asserting that Wright did not act promptly in raising this issue once having the benefit of the decision in Woodall, invites the Court to apply a one-year statute of limitations to all later-arising claims. We agree that the timeliness of raising a later-arising issue is a relevant factor; however, as in prior cases, we decline to apply a bright-line period of time in which to raise later-arising issues be it one year or three. Instead, our rule requires that each case be examined under the analysis set forth above and in light of the specific facts of the case.[6]

Accordingly, we conclude that the post-conviction suit was properly dismissed, and we affirm the judgment of the Court of Criminal Appeals.

## CONCLUSION

We conclude that the petitioner's issue regarding the suppression of exculpatory evidence is a later-arising claim. We further conclude, however, that the petitioner was not denied a reasonable opportunity to have the issue heard and litigated. Accordingly, we affirm the judgment of the Court of Criminal Appeals.

---

[6] The cases previously decided by the Court of Criminal Appeals with respect to similar issues, therefore, are limited to the facts and circumstances presented in those cases.

Costs of appeal are assessed against the appellant, Charles Walton Wright, for which execution may issue if necessary.

_____
RILEY ANDERSON, CHIEF JUSTICE


**CONCUR:**
Drowota, Birch, and Holder, JJ.

Barker, J., not participating