IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 20, 2003

## BARRY WINFRED RITCHIE v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 24060     Douglas A. Meyer, Judge**

**No. E2002-02609-CCA-R3-PC**
**August 18, 2003**

In a series of steps designed to challenge his 1981 convictions for armed robbery and aggravated rape, Petitioner, Barry Winfred Ritchie, filed various pro se motions including (1) a motion for post-conviction relief and/or writ of error coram nobis, (2) a motion for relief of judgment pursuant to Rule 60.02 of the Tennessee Rules of Civil Procedure, (3) a petition for common law writ of certiorari, and (4) a motion to quash the indictments and correct an illegal sentence. All pleadings are predicated on the same allegation that the Hamilton County Criminal Court lacked territorial jurisdiction to try and convict Petitioner of the charged offenses. Following a careful review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Barry Winfred Ritchie, Mountain City, Tennessee, *pro se*.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; and William H. Cox, III, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### a. Background

In order to understand Petitioner's present procedural posture, it is necessary to review briefly the history of his case. As Petitioner points out, he has been challenging his convictions in one form or another for some twenty-two years. Following his convictions, and those of his co-defendant, James William Massengale, for aggravated rape and armed robbery, the trial court sentenced each man to an effective sentence of life imprisonment. This Court affirmed the convictions on appeal. *State v. James William Massengale and Barry Winfred Ritchie*, No. 780, Hamilton County (Tenn.

Crim. App. Mar. 1, 1983), *perm. to appeal denied* (Tenn. June 27, 1983). Petitioner and Mr. Massengale then filed separate petitions for post-conviction relief which were denied, and the judgments of the trial courts were upheld on appeal. *State v. James William Massengale*, No. 922, Hamilton County (Tenn. Crim. App. Oct. 6, 1987), *perm. to appeal denied* (Tenn. Dec. 12, 1988); *Barry Winfred Ritchie v. State*, No. 946, Hamilton County (Tenn. Crim. App. July 23, 1986), *perm. to appeal denied* (Tenn. 1986). Neither Petitioner nor Mr. Massengale questioned the jurisdiction of the Hamilton County Criminal Court to try and convict them either on appeal or in their respective petitions for post-conviction relief.

In 1991, Mr. Massengale filed a petition for writ of habeas corpus alleging that the offenses leading to his convictions occurred on property owned by the Tennessee Valley Authority thereby giving exclusive jurisdiction over the crimes to the federal courts. This Court affirmed the trial court's denial of Mr. Massengale's petition because he failed to provide any proof "that Congress intended for the United States Courts to have exclusive jurisdiction over matters arising on Tennessee Valley Authority property." *Massengale v. Mills*, 826 S.W.2d 122, 123 (Tenn. Crim. App. 1991).

A few years later, Petitioner also filed a petition for writ of habeas corpus alleging the same jurisdictional problem with his convictions, that is, the crimes occurred on property under the exclusive jurisdiction of the federal government. Neither Petitioner nor his co-defendant denied that the offenses took place in their respective habeas corpus petitions. However, unlike Mr. Massengale, Petitioner submitted the following documents with his petition: "(1) a map placing the offenses on a tract of land designated as CR 1418; (2) a set of deeds conveying the tract to the United States, specifically the Tennessee Valley Authority (TVA), in fee simple on May 2, 1938, and (3) an easement assigning all 'rights, privileges and powers' over the tract from Hamilton County, Tennessee, to the City of Chattanooga on March 5, 1992." *Ritchie v. State*, No. 03C01-9601-CC-00029, 1998 WL 855517, at *1, (Tenn. Crim. App. June 21, 1999), *rev'd.*, 20 S.W.2d 624 (Tenn. 2000). On appeal following the trial court's dismissal of Petitioner's petition for writ of habeas corpus, this Court concluded that "a claim of lack of subject matter jurisdiction is cognizable in a habeas corpus proceeding." *Id.* at *2. We noted that a challenge to a trial court's territorial jurisdiction over the crimes, if successful, would render Petitioner's conviction void in that court. *Id.* at *3. At Petitioner's original trial, three witnesses testified that the crimes were committed on an "area along the bank of the Tennessee River south of the Chickamauga Dam, on the same side of the river as the Amnicola Highway, and immediately behind Chattanooga State University." *Id.* We noted that "[i]n general, the courts of the State of Tennessee lack subject matter jurisdiction over matters occurring on federal lands purchased before 1940 without express provisions to the contrary contained in the property agreement." Because the evidence in the record raised sufficient questions concerning the convicting court's jurisdiction, we reversed the trial court's judgment dismissing Petitioner's petition for writ of habeas corpus and remanded the matter for an evidentiary hearing despite the fact that the judgments of conviction were not facially void.

We also ordered the trial court to make findings of fact relative to the exact location of the offenses, the status of ownership at the time of the crimes and the status of any agreements between

the property owner and other entities. *Id.* at *11. We did not, however, as Petitioner vigorously maintains throughout his pleadings, conclude that the federal government had exclusive territorial jurisdiction over Petitioner's crimes. The determination of jurisdiction in this instance was, and still remains, dependent upon further factual determinations beyond the authority of this court. This Court's jurisdiction is appellate only. *See generally* Tenn. Code Ann. § 16-5-108; *State v. Workman*, 22 S.W.3d 807, 808 (Tenn. 2000). We do not possess the authority to conduct hearings and determine disputed issues of fact. *See Duncan v. Duncan*, 672 S.W.2d 765, 767 (Tenn. 1984). Instead, factual issues raised by the evidence are resolved by the trier of fact and not this Court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997), *cert. denied*, 523 U.S. 1083, 118 S. Ct. 1536, 140 L. Ed. 2d 686 (1997). Although Petitioner believes that the various deeds and grants filed with his motions leave no doubt as to the resolution of his jurisdictional issue, the State has not had an opportunity to respond to Petitioner's allegations, nor has a trial court made any factual determinations as to jurisdiction in light of the State's response.

Upon the State's appeal of our decision in *Ritchie*, the Supreme Court held that a petition for writ of habeas corpus is not the proper avenue for raising challenges to a conviction that depend on the introduction of extrinsic evidence. *Ritchie*, 20 S.W.3d at 634. Following a discussion of the history of habeas corpus relief, the court reiterated that "the reach of the writ of habeas corpus in Tennessee is severely restricted." *Id.* at 631. "[A] petitioner is not entitled to habeas corpus relief unless that petitioner can show from the record or the face of the judgment that the court of conviction lacked jurisdiction." *Id.* In a case such as Petitioner's where it is necessary "to introduce proof beyond the record to establish the invalidity of his conviction, then that conviction by definition is merely voidable, and a Tennessee court cannot issue the writ of habeas corpus under such circumstances." *Id.* at 633. Accordingly, the Supreme Court reversed the judgment of this Court and dismissed Petitioner's petition for a writ of habeas corpus.

Thereafter, Petitioner filed his *pro se* motions which are the subject of this appeal. In response to this Court's concerns over the status of the property's ownership at the time the offenses were committed, Petitioner also included with his pleadings a grant of easement dated July 25, 1991, from the United States, acting through the Tennessee Valley Authority, to Hamilton County relative to tract number XTCR-176RE for the purpose of building and operating a recreational facility. Petitioner maintains that the deed conclusively documents the chain of ownership of the property in question and supports his contention that the federal courts had exclusive jurisdiction over the offenses. The trial court, however, denied all of Petitioner's motions without an evidentiary hearing.

## b. Motion for Relief from Judgment

Petitioner first argues that the trial court erred in dismissing his "motion for relief from judgment" which he filed pursuant to Rule 60.02 of the Tennessee Rules of Civil Procedure. As relevant here, Rule 60.02 provides that a trial court may relieve a party from a final judgment if that judgment is void. In essence, Petitioner argues that this Court's decision in *Ritchie* rendered the 1986 judgment of the post-conviction court void thereby paving the way for the filing of a new post-conviction petition in which Petitioner can raise his jurisdictional issue. Notwithstanding

Petitioner's misconstruction of our *Ritchie* opinion, and statute of limitations problems aside, neither the Tennessee Rules of Civil Procedure nor the Tennessee Rules of Criminal Procedure apply to post-conviction proceedings except as specifically permitted. Tenn. Sup. Ct. R. 28 § 3(B); *State v. West*, 19 S.W.3d 753, 757 (Tenn. 2000). Because Rule 28 does not authorize the application of Rule 60.02 in a post-conviction setting, the trial court properly dismissed Petitioner's motion for relief of judgment. *See Harris v. State*, No. 02C01-9702-CR-00063*, 1998 WL 12671 (Tenn. Crim. App., Jackson, Jan. 15, 1998) *perm. to appeal denied* (Tenn. 1999). Petitioner is not entitled to relief on this issue.

## c. Petition for Post-Conviction Relief

Petitioner next argues that the trial court erred in dismissing his second petition for post-conviction relief because due process principles compel the tolling of the statute of limitations under the Tennessee Supreme Court's decision in *Burford v. State*, 845 S.W.2d 204 (Tenn. 1992). We respectfully disagree.

Although not constitutionally required to do so, the legislature enacted the Post-Conviction Procedure Act in 1967 to provide a post-conviction forum for addressing alleged constitutional errors outside the habeas corpus remedy available in federal court. *Seals v. State*, 23 S.W.3d 272, 275 (Tenn. 2000); *Burford*, 845 S.W.2d at 206. The Act's "authority and limitations are derived solely from the legislature and are not constitutionally mandated." *Oliphant v. State*, 806 S.W.2d 215, 217 (Tenn. Crim. App. 1991). Initially, the legislature did not establish a statute of limitations for the filing of a petition for post-conviction relief. *See Taylor v. State*, 995 S.W.2d 78, 86 (Tenn. 1999). Subsequently, however, in defining the procedures for securing post-conviction relief, the time and opportunity to file a petition was specifically limited. *Seals*, 23 S.W.3d at 277. In so doing, the legislature prohibited the filing of successive petitions for post-conviction relief. Tenn. Code Ann. § 40-30-202. "If a prior petition has been filed which was resolved on the merits by a court of competent jurisdiction, any second or subsequent petition shall be summarily dismissed." *Id.* - 202(c).

Following his direct appeal of his convictions, Petitioner filed a petition for post-conviction relief which was resolved on the merits. The trial court's judgment was affirmed on appeal in 1986, some seventeen years ago. The statute bars the filing of a second petition for post-conviction relief. Petitioner's only option in this procedural context is to file a petition to reopen his post-conviction proceedings if he meets the statutory criteria.

Even if Petitioner's petition is considered a petition to reopen his post-conviction proceedings, however, this avenue proves no more successful. A petitioner may reopen post-conviction proceedings after the expiration of the one-year statute of limitations only if (1) the claim is based on a constitutional right not in existence at the time of trial; (2) the claim is based on new scientific evidence that establishes the petitioner's innocence of the offense; or (3) the claim shows that the petitioner's sentence was enhanced by a prior conviction that was subsequently held to be invalid. Tenn. Code Ann. § 40-30-202(b); *Harris v. State*, 102 S.W.3d 587, 591 (Tenn. 2003).

Petitioner's claim, however, does not meet any one of the limited exceptions. If a petitioner's claim does not fall within one of these three categories, then the Petitioner has not presented a cognizable ground for reopening his or her post-conviction proceeding. *See id.* This Court has previously concluded that a jurisdictional issue is not a matter that can be litigated in a petition for post-conviction relief filed outside the one-year statute of limitations. *See Donehue v. State*, 963 S.W.2d 766, 768 (Tenn. Crim. App. 1997).

Petitioner compares his situation to that found in *Burford*, complaining that he is caught in a procedural trap from which there is no exit. However, Petitioner's dilemma is not the statute of limitations applicable to post-conviction proceedings because Petitioner has already been extended the opportunity, which he timely pursued, to collaterally attack his convictions. Rather, Petitioner's attempt to secure a second post-conviction hearing is frustrated by his inability to meet any of the limited exceptions that would allow him a second chance to raise new issues challenging a twenty-two-year-old conviction.

Petitioner's interest in collaterally challenging his conviction "is not a fundamental right entitled to heightened due process." *Burford,* 845 S.W.2d at 207. Nonetheless, due process requires the State to provide a petitioner with an opportunity to present his or her claims "at a meaningful time and in a meaningful manner" before terminating the claim for failure to meet procedural requirements. *Id.* In determining whether Petitioner has had such an opportunity, we must balance the state's interest in preventing the litigation of stale claims and the need for finality of judgments with Petitioner's liberty interest in challenging his convictions. *Sands v. State*, 903 S.W.2d 297, 301 (Tenn. 1995); *Burford*, 845 S.W.2d at 209. Petitioner's situation is clearly one where the weight of the balance lies more heavily with the State. Petitioner has not presented a claim that only arose after or near the expiration of the statute of limitations for post-conviction proceedings, which, in Petitioner's case, was three years. Tenn. Code Ann. § 40-30-102 (1990); *see Burford*, 845 S.W.2d at 298. Nor has Petitioner presented newly discovered exculpatory evidence not available at trial or claimed that he was prevented from asserting his claim as a result of mental incompetence. *See Sample v. State*, 82 S.W3d 267, 276 (Tenn. 2002); *Seals*, 23 S.W.3d at 279. On the contrary, Petitioner's claim existed and was available for pursuit from the time of trial through post-conviction proceedings. *See Brown v. State*, 928 S.W.2d 453, 456 (Tenn. Crim. App. 1996) ("Ignorance of the statute of limitations is not an excuse for late filing, even when the petitioner claims that he did not learn of the statute's enactment because he was incarcerated in another state."); *State v. Phillips*, 904 S.W.2d 123, 124 (Tenn. Crim. App. 1995) (Attorney's advice not to file a post-conviction petition "did not negate the reasonable opportunity available to the petitioner to seek relief, if he so chose.").

Petitioner's challenge to the convicting court's territorial jurisdiction is a claim that might have been fairly easy to resolve twenty years ago but now presents "all the dangers inherent in the litigation of stale claims which the State has a legitimate interest in preventing." *Caldwell v. State*, 917 S.W.2d 662, 666 (Tenn. 1996), *cert. denied*, 519 U.S. 853, 117 S. Ct. 148, 136 L. Ed. 2d 94 (1996). Despite Petitioner's protestations to the contrary, an evidentiary hearing is necessary to determine the exact location of Petitioner's crimes in order to resolve the jurisdictional issue. This is not a matter as was present in *Burford* where the trial court could simply resolve the issue from

the record. Although apparently there was some testimony as to the general location of the offenses, no trial court has as yet made a finding of fact as to this issue nor has the State had the opportunity to respond. Obviously, at this point in time, reconstruction of the crime will be hampered, if not made impossible, by the passage of time. *See Wright v. State*, 987 S.W.2d 26, 30 (Tenn.), *cert. denied,* 528 U.S. 828, 120 S. Ct. 81, 145 L. Ed. 2d 69 (1999).

Based on the foregoing, we find that the trial court did not err in denying Petitioner's second petition for post-conviction relief. Petitioner is not entitled to relief on this issue.

### d. Petition for Writ of Error Coram Nobis

Petitioner next argues that the trial court erred in dismissing his petition for a writ of error coram nobis. Although Petitioner concedes that the petition was filed well after the one-year statute of limitations applicable to such petitions, he contends that due process requires that the statute of limitations should be tolled. In this instance, it is not necessary to engage in a *Burford* analysis. Petitioner simply has not presented a claim for which a writ of error coram nobis is an appropriate remedy.

A writ of error coram nobis is a very limited remedy which allows a Petitioner the opportunity to present newly discovered evidence "which may have resulted in a different verdict if heard by the jury at trial." *State v. Workman*, 41 S.W.3d 100, 103 (Tenn. 2001); *see also State v. Mixon*, 983 S.W.2d 661 (Tenn. 1999). The remedy is limited "to matters that were not and could not be litigated on the trial of the case, on a motion for new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding." Tenn. Code Ann. § 40-26-105. Examples of newly discovered evidence include a victim's recanted testimony or physical evidence which casts doubts on the guilt of the Petitioner. *Workman*, 41 S.W.3d at 101; *State v. Ratliff*, 71 S.W.3d 291 (Tenn. Crim. App. 2001); *State v. Hart*, 911 S.W.2d 371 (Tenn. Crim. App. 1995).

Petitioner does not protest his guilt of the offenses supporting his conviction nor has Petitioner presented any evidence which would cast doubt on the convicting judgments. The writ of error coram nobis is not designed to address claims concerning a trial court's lack of territorial jurisdiction. Such matters involve constitutional issues, and the appropriate remedy, therefore, is a post-conviction proceeding. *See* Tenn. Code Ann. § 40-30-203 ("Relief under this part shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States."). Accordingly, we find that the trial court did not err in dismissing Petitioner's petition for writ of error coram nobis.

### e. Petition for Writ of Common Law Certiorari

Finally, Petitioner argues that the trial court erred in denying his petition for writ of common law certiorari under Tennessee Code Annotated section 27-8-101. In his petition, Petitioner essentially urged the Hamilton County Criminal Court to review its earlier judgments of conviction

in light of his jurisdictional challenge. A writ of certiorari, however, has limited application and may be granted only in those instances where an inferior tribunal has exceeded its jurisdiction or has acted illegally, and there is no other plain, speedy or adequate remedy. *Id.; see State v. Adler,* 92 S.W.3d 397 (Tenn. 2002). Accordingly, a writ of certiorari may not be invoked to secure a court's review of its own judgments. Therefore, we conclude that the trial court properly dismissed Petitioner's petition for writ of certiorari.

Petitioner also appeals the trial court's denial of his motion to quash his indictments and correct his illegal sentence without an evidentiary hearing. The trial court's action on Petitioner's motion to correct an illegal sentence is not appealable under Rule 3(b) of the Tennessee Rules of Appellate Procedure. *See Cox v. State*, 53 S.W.3d 287, 293 (Tenn. Crim. App. 2001). However, Petitioner requests this Court to permit his appeal to proceed as a petition for writ of certiorari.

We begin with a general observation that while the criminal process is designed to provide a framework within which a petitioner may timely raise legitimate claims against his or her conviction or sentencing, the process must be balanced "with the need for finality of judgments." *See State v. West*, 19 S.W.3d 753 (Tenn. 2000); *Villanueva v. State*, 883 S.W.2d 580 (Tenn. 1994). Our statutes do not adopt "an open- and possibly never-ending approach to post-conviction review." *West,* 19 S.W.3d at 756. Rule 3(b) of the Tennessee Rules of Appellate Procedure provides a defendant only a limited right of appealing his or her conviction. A defendant may appeal a judgment of conviction, an order denying or revoking probation, and final judgments in a criminal contempt, habeas corpus, extradition or post-conviction proceeding. *Id.* Rule 3(b) does not provide an appeal as of right for trial court orders denying motions to correct sentences. *Cox*, 53 S.W.3d at 293. However, because a trial court "may correct an illegal, as opposed to a merely erroneous, sentence at any time, even if it becomes final," this Court has "on occasion reviewed illegal sentence claims via the common law writ of certiorari." *Id.; State v. Burkhart*, 566 S.W.2d 871, 873 (Tenn. 1978).

In *Cox*, this Court discussed at length the procedural paths a defendant may take to raise issues concerning the legality of a sentence once it becomes final:

> The key to analyzing these collateral attacks on sentences is to appreciate that the phrase "illegal sentence" as used in our case law is a term of art that refers to sentences imposed by a court that is acting beyond its jurisdiction–that is to say, sentences that result from void judgments. . . . [H]abeas corpus is the preferred, if not the only, method of collaterally attacking void sentences and collateral attacks that assert lesser claims of merely erroneous or voidable sentences are generally doomed, unless by nature they fit within some other recognized form of action.

*Cox*, 53 S.W.3d at 291.

An illegal sentence is one that directly contravenes a statute in existence at the time the sentence is imposed. *Taylor*, 995 S.W.2d at 83. If the judgment of sentencing, on its face, is within

the statutorily set range for the Petitioner's offense but the challenge raises merely a sentencing anomaly, then the sentence is voidable rather than void. *Cox,* 53 S.W.3d at 291-92 *(*comparing *Burkhart*, 566 S.W.2d at 873 (The trial court's judgment ordering the Petitioner's sentences for escape and burglary to run concurrently was in direct contravention of the statute and therefore void) with *State v. Mahler*, 735 S.W.2d 226, 228 (Tenn. 1987) (The Petitioner's challenge to his agreement to be sentenced as a Range II offender when he could be classified only as a Range I offender was waived by his guilty plea and could only be attacked by direct appeal.)). "In other words, the sentence [in *Mahler*] was not illegal or void but was, at most, voidable." *Cox*, 53 S.W.3d at 291.

The distinction between a void and voidable conviction, therefore, continues to plague Petitioner whether he is proceeding under a petition for writ of certiorari or a petition for writ of habeas corpus. As we have previously noted, "[t]he phrase 'illegal sentence' is synonymous with the *habeas corpus* concept of a 'void' sentence." *Id.* at 292. Motions filed to correct a sentence which are not facially void are generally futile unless such motion can be viewed as a motion to correct a clerical error or a timely filed motion to reduce a sentence. *Id.*; Tenn. R. Crim. P. 35, 36. "[A]ppeals via certiorari should rarely be granted to review motions that assert sentencing infirmities which do not rise to the level of illegality or voidness." *Cox*, 53 S.W.3d at 294. Rather, if the challenge to a sentence renders the conviction voidable but not void, such challenges are best presented in a post-conviction proceeding where the trial court will be able to hear the proof and make a factual determination as to the challenge based on the record before it. *See Archer v. State*, 851 S.W.2d 157, 163 (Tenn. 1993).

Petitioner relies on this Court's opinions in *State v. Donald Ree Jones*, No. M2000-00381-CCA-R3-CD 2000, WL 1520012 (Tenn. Crim. App., Nashville, Oct. 13, 2000) and *State v. Bruce C. Reliford*, No. W1999-00826-CCA-R3-CD, 2000 WL 1473846 (Tenn. Crim. App., Jackson, Oct. 2, 2000) to support his position that his appeal of the trial court's denial of his motion to correct an illegal sentence may properly be reviewed by this Court under a common law writ of certiorari. In *Reliford*, following his conviction for first degree murder in 1992, the defendant was sentenced to life without parole. Prior to 1993, the only punishments available for those convicted of first degree murder were life imprisonment and death. *Reliford*, 2000 WL 1473846, at *2 (citing *State v. Cauthern*, 967 S.W.2d 726, 735 (Tenn. 1998)). Initially, the defendant filed a motion to correct an illegal sentence which was denied by the trial court on the basis that the sentence resulted from a valid plea agreement. After noting that the defendant could not directly appeal the trial court's order under Rule 3(b), we elected to treat the appeal as a petition for writ of certiorari. *Id.* Because the defendant's sentence of life without parole was in direct contravention of the then existing statute governing the punishment for first degree murder, and therefore void, we vacated the defendant's conviction and sentence and remanded to the trial court to impose a sentence mutually agreed upon by the State and the defendant. If no agreement as to sentencing was reached, we directed the trial court to permit the defendant to withdraw his guilty plea and proceed to trial.

In *Jones*, on the other hand, we declined to grant an appeal under a writ of certiorari following the trial court's dismissal of the defendant's motion to correct an illegal sentence. *Jones*, 2000 WL 1520012, at *4. In this instance, the defendant claimed his sentence was illegal because

he received a higher sentence upon remand than he had received prior to his appeal. *Id.* at *1. The defendant was convicted of two first degree murders following a jury trial and sentenced to concurrent ninety-nine-year sentences. *Id.* After his convictions were reversed on appeal, the defendant pled guilty and received a life sentence under the terms of his plea agreement. Because a sentence of life imprisonment was statutorily authorized when the defendant entered into his plea agreement, the defendant's sentence was not facially void. As a result, we declined to review the defendant's challenge to the length of his sentence under a petition for writ of certiorari. We also declined to review the defendant's other challenges to his plea agreement based on alleged due process violations stemming from judicial and prosecutorial vindictiveness. All of the challenges raised by the defendant, at best, rendered the defendant's sentence voidable, not void, and should have been raised in a post-conviction proceeding. *Id.* at *3.

The Supreme Court has previously determined that Petitioner's judgments of convictions are, at best, voidable, and Petitioner must still satisfy his evidentiary burden that the trial court was without jurisdiction to try and convict him for the crimes occurring in Hamilton County. *Ritchie*, 20 S.W.3d at 634. Although Petitioner complains that he has no procedural mechanism available for invoking such an evidentiary hearing seventeen years after his conviction, Petitioner was provided the opportunity to present his challenges either on direct appeal or through the post-conviction forum. Under the circumstances present in Petitioner's case and in the interests of justice, we affirm the trial court's dismissal of Petitioner's motion to quash indictments and correct an illegal sentence. Petitioner is not entitled to relief on this issue.

## Conclusion

After a careful review of the entire record, we affirm the judgments of the trial court.

_____
THOMAS T. WOODALL, JUDGE