IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 11, 2014

## ANDRE DE LA REY ROSSOUW v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2001-I-675      J. Randall Wyatt, Jr., Judge**

_____

**No. M2013-00604-CCA-R3-CO - Filed March 28, 2014**

_____

The Petitioner, Andre De La Rey Rossouw, pleaded guilty in 2001 to stalking. On July 27, 2012, the Petitioner filed a petition for writ of error coram nobis arguing that his guilty plea was constitutionally invalid. Following a hearing, the coram nobis court denied the petition, and the Petitioner timely appealed. After a careful review of the record, we affirm the judgment of the coram nobis court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Criminal Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

David A. Collins, Nashville, Tennessee, for the appellant, Andre De La Rey Rossouw.

Robert E. Cooper, Jr., Attorney General & Reporter; Clarence E. Lutz, Senior Counsel; Victor S. (Torry) Johnson III, District Attorney General; and Benjamin Ford, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual & Procedural Background**

The Petitioner originally was indicted on charges of assault and stalking. On July 26, 2001, the Petitioner pleaded guilty to stalking, a misdemeanor. The Petitioner's agreed-upon sentence was eleven months, twenty-nine days' incarceration, which the trial court considered "time served" at the time of his guilty plea submission. Pursuant to the plea agreement, the trial court dismissed the Petitioner's assault charge.

On July 27, 2012, the Petitioner filed the present petition for writ of error coram nobis in which he argued that his guilty plea was invalid. At the hearing for his coram nobis petition, the Petitioner informed the coram nobis court that he was from South Africa. The Petitioner testified that his stalking and assault charges arose out of an affair that he had with the victim while he was separated from his wife. By the time the Petitioner pleaded guilty, he had reunited with his wife and remained married to her until 2011.

The Petitioner stated that he was told that he would not be able to post bond because of his immigration issues. His attorney ("trial counsel") told him that "the only way . . . they [we]re going to let [him] go" was if the Petitioner pleaded guilty to either his stalking or assault charge. The Petitioner asked trial counsel why he could not pay his bond and, according to the Petitioner, trial counsel told him "there is nothing they can do" and that pleading guilty was "the only way that [the Petitioner was] going to get out," given that it would be approximately one year before the Petitioner could proceed to a jury trial. The Petitioner stated, "I thought, you know, I just reunited with my wife, me sitting in a jail for a year and she is the reason as well that, you know, I am here, she is going to just . . . leave me . . . sitting a whole year in jail and besides I couldn't take it in jail."

The Petitioner testified that trial counsel told him, "Well, that's all you can do you, everything else is hopeless." The Petitioner asked trial counsel to which offense he should plead guilty, and trial counsel responded, "Well, whichever one you want." Trial counsel told the Petitioner that he (trial counsel) was not an immigration attorney and that he could not tell the Petitioner what potential consequences he might have from pleading guilty but advised the Petitioner that he indeed might face immigration consequences. The Petitioner decided that the assault charge "sound[ed] like violence," so he asked to plead guilty to the stalking charge. According to the Petitioner, he learned later that a stalking conviction resulted in automatic deportation because it is "a crime involving moral turpitude."

The Petitioner testified that, when he pleaded guilty, he thought that he immediately would be released because his sentence was for "time served." After judgment was entered, however, he was held for two days until he was transported by immigration officers to Memphis and then to Louisiana. In Louisiana, the Petitioner appeared before an immigration judge, who allowed the Petitioner to post a $5,000 bond. The Petitioner returned home until his hearing in 2002, at which time the immigration court "administratively closed" his case "because they allowed [the Petitioner] and [his] wife to file another petition" – a "relative petition" to allow the Petitioner to stay in the U.S. with his wife. In 2007, the Petitioner learned that his "relative petition" had been approved. The immigration office then informed the Petitioner that he needed to file for permanent residency with the Department of Homeland Security ("DHS"). His application for permanent residency was denied in 2009, however, because, given that the Petitioner had a conviction for stalking, he remained under

the jurisdiction of the immigration court. The Petitioner then was required to "re-open" his case with the immigration court. He was given a court date to appear in February 2010. The immigration court informed him at that time that he did not automatically qualify for permanent residency because of his conviction but that he might be able to meet the qualifications of the "waiver" that would allow him to receive permanent residency. His final hearing with the immigration court did not occur until March 2012. Immediately prior to the Petitioner's hearing, his wife served him "divorce papers," which he took with him to his immigration hearing. The immigration court gave the Petitioner until December 2012 to "rekindle" his marriage. The Petitioner, however, was unable to do so, and the immigration court ordered that the Petitioner be deported. He filed an appeal through the immigration system, but, at the time of his hearing, he had not heard if the agency had "approve[d]" his appeal.

The Petitioner then confirmed that he was before the coram nobis court to ask that the court "nullify" his plea because he was misinformed when he entered into the plea. He also alleged that he received ineffective assistance of counsel.

On cross-examination, the Petitioner claimed that his trial counsel did not investigate the fact that the victim had been on probation for a previous offense and had been court-ordered to receive psychiatric treatment. He agreed that, at the time of his plea, he was aware of the victim's previous conviction for solicitation to commit first degree murder of her ex-husband. He noted, however, that he did not learn about the victim's court-ordered treatment until "years later." The Petitioner stated that he did not understand why the State or law enforcement did not speak with him personally about his alleged offenses in light of the information pertaining to the victim.

The coram nobis court took the matter under advisement and issued a written ruling on February 12, 2013, denying relief. In its order, the coram nobis court analyzed the Petitioner's claim as a petition for coram nobis relief and post-conviction relief. The court noted that the Petitioner's claim was filed ten years after the one-year statute of limitations had run for a coram nobis or post-conviction relief claim. Moreover, the court found no reason to toll the statute of limitations in this case. Accordingly, the coram nobis court denied the Petitioner both coram nobis and post-conviction relief. The Petitioner timely appeals, asking this Court to toll the one-year statute of limitations.

## Analysis

"Whether a claim is barred by an applicable statute of limitations is a question of law, which we review de novo." Harris v. State, 301 S.W.3d 141, 145 (Tenn. 2010) (citing Brown v. Erachen Comilog, Inc., 231 S.W.3d 918, 921 (Tenn. 2007)). "Whether due process

considerations require tolling of a statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness." Id.

The coram nobis court chose to analyze the Petitioner's allegations under the Post-Conviction Procedure Act, in addition to consideration as a claim for coram nobis relief. See Tenn. Code Ann. §§ 40-30-101 to -313 (2006 and Supp. 2011); Norton v. Everhart, 895 S.W.2d 317, 319 (Tenn. 1995) ("It is well settled that a trial court is not bound by the title of the pleading but has the discretion to treat the pleading according to the relief sought."). On appeal, however, the Petitioner seeks only coram nobis relief on the ground that the newly discovered evidence of the victim's court-ordered psychological treatment entitles the Petitioner to a new trial. Therefore, the Petitioner waives any post-conviction argument on appeal. See Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court.").

A petition for a writ of error coram nobis must be filed within one year of the underlying judgment becoming final. See Tenn. Code Ann. §§ 27-7-103 (2000); 40-26-105(a) (2006). This time period begins "either thirty days after [the judgment's] entry in the trial court if no post-trial motions are filed or upon entry of an order disposing of a timely filed, post-trial motion." Harris, 301 S.W.3d at 145 (citing State v. Mixon, 983 S.W.2d 661, 670 (Tenn.1999)). "We construe the coram nobis statute of limitations consistent with the longstanding rule that persons seeking relief under the writ must exercise due diligence in presenting the claim." Id. (citing Mixon, 983 S.W.2d at 670). The burden is on the State to raise the statute of limitations bar as an affirmative defense. Id.

The one-year limitations period in this matter expired in 2002. However, in certain coram nobis claims "based on newly discovered evidence of actual innocence," a tolling of the statute of limitations may be required on due process grounds. Id. (citing Workman v. State, 41 S.W.3d 100, 101 (Tenn. 2001)). Put another way, "before a state may terminate a claim for failure to comply with procedural requirements such as statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner." Burford v. State, 845 S.W.2d 204, 208 (Tenn.1992).

To determine whether a claim for relief requires tolling of the statute of limitations, a court should conduct the following inquiry:

(1) determine when the limitations period would normally have begun to run;
(2) determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are

-4-

"later-arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim.

Sands v. State, 903 S.W.2d 297, 301 (Tenn. 1995).

Looking at the first step in the analysis, we note that the Petitioner's statute of limitations began to run thirty days following the trial court's judgment, which was entered July 26, 2001. Accordingly, the statute of limitations ran until August 25, 2002. Thus, the statute of limitations period ended approximately ten years prior to the Petitioner's filing for coram nobis relief.

Therefore, we must consider the second step in the inquiry – whether the Petitioner's alleged claims "actually arose after the limitations period would normally have commenced." See Sands, 903 S.W.2d at 301. The Petitioner's purported "newly discovered evidence" in this case is information that the victim received a court order to undergo psychological treatment in conjunction with her conviction of solicitation to commit first degree murder of her ex-husband. According to the Petitioner, although he claimed that both the State and trial counsel were aware of this information at the time of the guilty plea, he did not learn about this information until "years later" after his guilty plea. He acknowledged at the coram nobis hearing that he was aware of the victim's solicitation conviction but insisted that he was not aware of her court-ordered psychological treatment. We note that the Petitioner failed to give a specific date on which he learned about this information regarding the victim. Assuming the validity of the Petitioner's testimony, he learned about this information of the victim "years later," which would be after the statute of limitations had run and, thus, was "later-arising."

Assuming, then, that the Petitioner's claim regarding the information of the victim's court-ordered psychological treatment is "later-arising," we must determine whether "a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim." See Sands, 903 S.W.2d at 301. "To determine whether a petitioner was denied a reasonable opportunity to present a claim, a court must balance the liberty interest in collaterally attacking the constitutional violations occurring during the conviction process against the State's legitimate interest in preventing the litigation of stale and fraudulent claims." Wright v. State, 987 S.W.2d 26, 28 (Tenn. 1999) (citing Sands, 903 S.W.2d at 301).

In conducting this inquiry, our supreme court has declined to set a specific limitations period or "an outer limit of reasonableness" for "later-arising" claims. See Harris, 301 S.W.3d at 146. In Harris, however, our supreme court determined that delays of six years

and twenty-one months, respectively, after new evidence arose were unreasonable and not entitled to due process tolling. Id. As noted above, the Petitioner testified that he learned about this information regarding the victim "years later" after he entered his guilty plea. Rather than proceeding to promptly file a coram nobis claim for relief at the time that he learned this information, he waited until he was faced with deportation. We note, once again, that the Petitioner has not provided a date in which he learned about the victim's treatment. Rather, the Petitioner testified only that he learned about it "years later" after his guilty plea. Accordingly, the Petitioner has failed to establish that he sought relief from his conviction in a timely manner after learning about the information pertaining to the victim's psychological treatment.

Moreover, our supreme court has noted that evidence substantiating a petitioner's claims can strengthen a petitioner's liberty interest. See Sample v. State, 82 S.W.3d 267, 274 (Tenn. 2002). In Sample, the record evidently "was accompanied by exhibits and records replete with apparent exculpatory evidence." Id. Our supreme court contrasted that record with the record in Wright, 987 S.W.2d at 30, which "contained 'mere allegations' of exculpatory evidence." Id. (quoting Wright, 987 S.W.2d at 30). The record in this case is more similar to the record in Wright because the Petitioner has provided nothing other than allegations at his hearing. The Petitioner has failed to provide any documentation evidencing the victim's court-ordered psychological treatment. Thus, for the foregoing reasons, we weigh the State's interest more heavily in this case and conclude that the Petitioner did not seek relief from his conviction in a reasonable amount of time and in a reasonable manner. Consequently, the Petitioner is not entitled to relief.

## CONCLUSION

The Petitioner has failed to establish that he is entitled to have the coram nobis one-year statute of limitations period tolled on due process grounds. Therefore, we affirm the judgment of the coram nobis court denying relief.

_____
JEFFREY S. BIVINS, JUDGE