IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
December 12, 2017 Session

## NASIR HAKEEM v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Montgomery County**
**No. 41100128     William R. Goodman, III, Judge**

_____

### No. M2016-02549-CCA-R3-PC

_____

The Petitioner, Nasir Hakeem, appeals the Montgomery County Circuit Court's denial of post-conviction relief, arguing that his attorneys were ineffective for failing to inform him of the deportation and other immigration consequences of a conviction at trial pursuant to Padilla v. Kentucky, 559 U.S. 356 (2010). The State contends that the petition is time-barred and that the post-conviction court erred in tolling the one-year statute of limitations based on the Petitioner's ignorance of Padilla. Because the post-conviction court erred in tolling the limitations period, this court is deprived of jurisdiction to hear this appeal. Accordingly, the appeal is dismissed.

### Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and TIMOTHY L. EASTER, JJ., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Nasir Hakeem.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; John W. Carney, District Attorney General; and Robert J. Nash, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Following a bench trial, the Petitioner, a foreign national from Pakistan, was convicted of two counts of sexual battery, a Class E felony. State v. Nasir Hakeem, No. M2012-02150-CCA-R3-CD, 2013 WL 6706122, at *1 (Tenn. Crim. App. Dec. 18, 2013), perm. app. denied, (Tenn. May 14, 2014). On August 2, 2012, the trial court imposed concurrent, suspended sentences of eighteen months for each conviction and required the Petitioner to register as a sex offender. Id. The Petitioner's convictions were affirmed on direct appeal. Id.

On April 21, 2016, the Petitioner filed a petition for post-conviction relief, alleging that initial counsel and successor counsel were ineffective for failing to inform him of the deportation and other immigration consequences of a conviction for sexual battery at trial. The Petitioner claimed he did not file this petition within one year of the date his conviction became final because he was not aware that his convictions would negatively impact his immigration status until November 15, 2015, when his immigration attorney informed him that his convictions made him ineligible to renew his investor visa. Affidavits from initial counsel, successor counsel, the Petitioner's immigration attorney, and the Petitioner were attached to the post-conviction petition. The Petitioner's immigration attorney stated in her affidavit that when she met with the Petitioner in mid-November 2015, she informed him that his convictions for sexual battery would "probably negate any chance [he] ha[d] of applying for cancellation of removal before the immigration court, which mean[t] he would not be eligible to obtain Legal Permanent Residence or a 'green card'" and that the Petitioner would be "precluded from filing for other relief such as Asylum or Withholding of Removal, among others[.]" This "appeared to be a complete surprise to [the Petitioner]." Initial counsel stated in his affidavit that he represented the Petitioner for a short period of time before successor counsel took control of this case. He said he did not inquire as to whether the Petitioner was a United States citizen and did not inform the Petitioner that a criminal conviction could negatively impact his immigration status. Successor counsel, in her affidavit, stated that although she knew that the Petitioner was not a United States citizen, she never considered or discussed with the Petitioner whether a criminal conviction for sexual battery would impact his immigration status. She added that in her professional opinion, the Petitioner had "a Due Process right to be told about the entire potential ramifications of a criminal trial and/or plea negotiations[,] and the failure to tell [the Petitioner] about possible deportation issues if he was convicted of Sexual Battery amount[ed] to ineffective assistance of counsel."

On May 6, 2016, the State filed an Answer to the Petitioner's petition for post-conviction relief, asserting that the petition was time-barred, that ignorance of the Padilla claim did not entitle the Petitioner to due process tolling of the statute of limitations, and that even if counsel were deficient, the Petitioner had failed to show that counsels' deficiencies prejudiced his defense.

On May 16, 2016, prior to the post-conviction hearing, the Petitioner filed a brief, wherein he argued that he was entitled to due process tolling of the limitations period pursuant to Williams v. State, 44 S.W.3d 464 (Tenn. 2001), and Sands v. State, 903 S.W.2d 297 (Tenn. 1995).

At the November 14, 2016 post-conviction hearing, successor counsel testified that she began representing the Petitioner in July 2011 and that the Petitioner's bench trial

took place in February 2012. She said she was not aware of the Padilla case during her representation of the Petitioner, and the Petitioner never told her he was not a United States citizen. She did not recall talking to the Petitioner about whether a conviction would negatively affect his immigration status. Successor counsel said that she was not the Petitioner's first attorney and that "everything had been done that was going to be done; motion, practice, discovery" by the time she began representing the Petitioner. She did not believe "there was any possibility of a conviction based upon the facts in [the Petitioner's] case." She did not recall talking to the Petitioner about entering a guilty plea and said that "[t]here was never any intention but to try the case."

Successor counsel admitted that if she had known that the Petitioner was a foreign national and that a sexual battery conviction would result in his being deported and blocked from asylum, then her strategy would have changed. Specifically, she would have had the Petitioner contact an immigration attorney in Nashville, as she does with her other clients who are not United States citizens. She acknowledged that the Padilla case was decided prior to the Petitioner's trial but asserted that she "didn't have anything that was relevant at that time to Padilla that I knew of, so it wasn't something I even looked at." She said she first discovered that the Petitioner was a foreign national when the officer who handled the sex offender registry informed her that Immigration and Customs Enforcement had taken the Petitioner into custody to deport him the day he completed his probation.

Successor counsel stated that the Petitioner had been charged with two counts of sexual battery in this case but was also facing criminal charges in approximately three other cases that were eventually dismissed. She said that in the case at issue in this proceeding, the Petitioner "made it very clear that he would like the case dismissed." She could not remember if she called the State to say that the case needed to be dismissed, but thought it was "very likely" that she did because that was "something [she] would normally do."

Successor counsel said that if she had known that a conviction would result in the Petitioner's deportation, she might "have tried harder to get the case dismissed." Specifically, she stated, "[H]ad I known what would happen at the end of the day because of this conviction, which is relatively minor for anyone else, I probably would have brought in every witness I could find to challenge the credibility of the witnesses in that trial." She acknowledged that she should have employed this strategy at the Petitioner's bench trial but "did not do it" because she believed that the witnesses' credibility "was so horrible" that the Petitioner would not be convicted.

Successor counsel said that following Padilla, it became routine to ask people from another country about their immigration status. She acknowledged that she should

have asked the Petitioner at the time about his immigration status and that it was error for her not to do so.

Initial counsel testified that although he was initially retained by the Petitioner in February 2011, successor counsel later entered an appearance as "co[-]counsel of record" when the Petitioner made it clear that he wanted successor counsel to represent him at trial. He said that once successor counsel became involved in the case in July 2011, he "had no further participation at all in the case" and did not assist at trial. He agreed that under Padilla, it would be attorney error not to inquire about a client's immigration status if the attorney believed the client might be from another country.

Initial counsel acknowledged that he never talked with the Petitioner about his immigration status and never asked him whether a conviction would affect his ability to stay in this country. However, he asserted that the Petitioner never informed him that he was a foreign national. Initial counsel said he first realized that there might be adverse immigration consequences when he received the Petitioner's post-conviction petition in 2016. He was unsure whether his approach to the case would have changed had he known that a conviction would result in the Petitioner's deportation because "trial had not been discussed," and he and the Petitioner "may not have had a reason to have that conversation at that point in time." He explained that he had been involved in some preliminary matters in the case, including filing "one or two pretrial motions or standard discovery motions," but that after successor counsel became co-counsel of record, he had no further involvement in the Petitioner's case.

Initial counsel recalled the Petitioner having three sexual battery cases involving three different victims. While he acknowledged that "a number of cases [against the Petitioner] were dismissed" and that the Petitioner was convicted in this case following a bench trial, he did not remember "having any settlement discussions with the State on this case."

The Petitioner admitted that he never discussed the fact that he was not a United States citizen with his attorneys. At the time of his bench trial, the Petitioner was legally in this country on an investor visa and had been living in the United States for seventeen years. He said that he would be sent to Pakistan if deported. The Petitioner asserted that he had no connections to Pakistan because his entire family had settled in the United States, his children had been born in the United States, and his business was in the United States. The Petitioner said that he initially became aware that his sexual battery convictions would prevent him from renewing his visa and would adversely impact his immigration status when he took his case to his immigration attorney. He asserted that if he had known of the negative consequences stemming from his convictions, he would have insisted on having a jury trial rather than a bench trial.

- 4 -

The Petitioner acknowledged that there had been at least three sexual battery cases against him involving his employees at his restaurant. He claimed that when he went through the process to obtain an investor visa to start a business in the United States, no one at the immigration agency ever informed him that he could not be convicted of a felony in the United States while holding this visa.

The prosecutor assigned to the sexual battery cases against the Petitioner testified that he recalled the Petitioner having four sexual battery cases that were "quite similar." The victims in these cases were young girls, ranging in age from sixteen to eighteen years old, who alleged that the Petitioner had "fondled them" at work. The prosecutor stated that there was no chance that he would have dismissed all of the sexual battery cases against the Petitioner. He recalled talking to the Petitioner's attorneys about the Petitioner's immigration status but could not remember whether these conversations occurred before or after the Petitioner's bench trial. The prosecutor stated that it was his position that the Petitioner was going to go to trial on the strongest case against him, which was what occurred. The prosecutor noted that the victim's "version of events was corroborated by her coworker, who was an acquaintance at best, not really a friend, and it was corroborated by her mom, and there was another witness [the State called who] made fresh complaints [against the Petitioner] too. So the State was satisfied as to [the victim's] credibility, and those factors also made it the strongest case." The prosecutor asserted that the Petitioner's immigration status was "legally irrelevant and could not have been presented to a jury or, for that matter, the court." He acknowledged that over the last thirty years, he had prosecuted cases he believed were strong that resulted in an acquittal.

On November 22, 2016, the post-conviction court entered an order denying relief. The court noted the State's claim that the petition was time-barred and post-conviction counsel's claim that due process tolled the statute of limitations. After citing the factors in Sands, 903 S.W.2d at 300, for determining whether due process tolling applies, the post-conviction court acknowledged that "due process may require tolling when circumstances beyond the petitioner's control preclude raising the post-conviction claims." The court noted that "there [was] the allegation of inaccurate or at least deficient advice of counsel." It then held that the petition was not time-barred because "a strict application of the limitations period would deny the petitioner an opportunity to present the claim[.]" As to the Petitioner's ineffective assistance of counsel claim, the court noted that the Petitioner "did not enter a plea of guilty, but in fact proceeded to trial" while in Padilla, "the defendant waived his right to trial without knowledge of the consequences." The court then held that the Petitioner had failed to establish that counsel were deficient or that counsels' deficiencies prejudiced his defense:

[The Petitioner] argues that had the trial attorneys known of the immigration issues or advised [him] of the immigration issues that either trial counsel or the [P]etitioner may have done more or worked harder to defend the case. There is no proof of deficient representation of [P]etitioner in either pre-trial matters, the trial itself[,] or the subsequent appeal. Therefore[,] this court finds there is no basis to find the alleged deficiency of representation prejudiced the defense of the [P]etitioner, nor does this court find any deficiency that would constitute a "structural defect[."] Consequently[,] the second prong of Strickland [v. Washington, 466 U.S. 668 (1984),] is not established.

Following entry of the order denying post-conviction relief, the Petitioner timely filed a notice of appeal.

## ANALYSIS

**I. Statute of Limitations.** The State asserts that the post-conviction court erred in tolling the one-year statute of limitations based on the Petitioner's ignorance of Padilla and that the petition is time-barred. We agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103. A person in custody under a sentence of a court of this state must petition for post-conviction relief within one year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one year of the date on which the judgment becomes final. Id. § 40-30-102(a). The statute explicitly states, "The statute of limitations shall not be tolled for any reason, including any tolling or saving provision otherwise available at law or equity." Id. It also emphasizes that "[t]ime is of the essence of the right to file a petition for post-conviction relief or motion to reopen established by this chapter, and the one-year limitations period is an element of the right to file the action and is a condition upon its exercise." Id.

Tennessee Code Annotated section 40-30-102(b) provides three exceptions to the statute of limitations for petitions for post-conviction relief:

No court shall have jurisdiction to consider a petition filed after the expiration of the limitations period unless:

(1) The claim in the petition is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing

- 6 -

at the time of trial, if retrospective application of that right is required. The petition must be filed within one (1) year of the ruling of the highest state appellate court or the United States supreme court establishing a constitutional right that was not recognized as existing at the time of trial;

(2) The claim in the petition is based upon new scientific evidence establishing that the petitioner is actually innocent of the offense or offenses for which the petitioner was convicted; or

(3) The claim asserted in the petition seeks relief from a sentence that was enhanced because of a previous conviction and the conviction in the case in which the claim is asserted was not a guilty plea with an agreed sentence, and the previous conviction has subsequently been held to be invalid, in which case the petition must be filed within one (1) year of the finality of the ruling holding the previous conviction to be invalid.

Id. § 40-30-102(b)(1)-(3).

In addition to these statutory exceptions, due process concerns may, in certain circumstances, allow for the tolling of a statute of limitations. See Williams, 44 S.W.3d at 468; Workman v. State, 41 S.W.3d 100, 103 (Tenn. 2001); Seals v. State, 23 S.W.3d 272, 279 (Tenn. 2000); Sands, 903 S.W.2d at 301; Burford v. State, 845 S.W.2d 204, 208 (Tenn. 1992). The Tennessee Supreme Court has held that a limitations period may be tolled in cases where its strict application would "deny a petitioner 'a reasonable opportunity to assert a claim in a meaningful time and manner.'" Williams, 44 S.W.3d at 468 (quoting Seals, 23 S.W.3d at 279). Notwithstanding the statutory language in Code section 40-30-102(a) that "the statute of limitations shall not be tolled for any reason, including any tolling or saving provision otherwise available at law or equity," a petitioner may have a limitations period tolled on due process grounds if "circumstances beyond a petitioner's control prevented the petitioner from filing a petition for post-conviction relief within the statute of limitations." Smith v. State, 357 S.W.3d 322, 358 (Tenn. 2011); see Williams, 44 S.W.3d at 469.

When determining whether due process tolling applies, we must consider: (1) when the limitations period normally would have begun to run; (2) whether the grounds for relief actually arose after the limitations period normally would have commenced; and (3) if the grounds are later-arising, whether a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim. Sands, 903 S.W.2d at 301. In determining whether a petitioner was denied a reasonable opportunity to present a claim, this court must "balance the liberty interest in collaterally attacking the constitutional violations occurring during the conviction process against the

State's legitimate interest in preventing the litigation of stale and fraudulent claims." Wright v. State, 987 S.W.2d 26, 28 (Tenn. 1999); see Sands, 903 S.W.2d at 301. "'Whether due process considerations require tolling of a statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness.'" Smith, 357 S.W.3d at 355 (quoting Harris v. State, 301 S.W.3d 141, 145 (Tenn. 2010)).

Our review of the record shows that none of the statutory exceptions for tolling the statute of limitations is applicable to the Petitioner's case. In applying the Sands factors, we note that the limitations period in the Petitioner's case began to run on May 14, 2014, the day that the Tennessee Supreme Court denied the Petitioner's application for permission to appeal. Nasir Hakeem, 2013 WL 6706122, at *1. However, the rule in Padilla was announced on March 31, 2010, more than four years earlier, and nothing prevented the Petitioner from filing his post-conviction petition within the one-year statute of limitations, which expired on May 14, 2015. See Seals, 23 S.W.3d at 279 (noting that "[t]he 'later-arising claim' limitation in Sands reflects the concern that a petitioner who fails to assert an existing claim, that is, a claim that is not later-arising, in a timely fashion may not expect due process relief").

In Padilla, 559 U.S. at 368-69, the United States Supreme Court held that counsel engaged in deficient performance under the first prong of the test in Strickland by failing to advise his non-citizen client that his guilty plea made him subject to automatic deportation. In reaching this decision, it noted that "[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation." Id. at 367. The court extended its holding not only to affirmative misadvice by counsel but also omissions by counsel as to whether a guilty plea could negatively impact a non-citizen's immigration status. Id. at 370-71.

This court has consistently rejected arguments that a petitioner's claim for relief under Padilla is "later[-]arising" when determining whether there is a basis for due process tolling. See Antonio Angel Onate v. State, No. M2013-00531-CCA-R3-PC, 2013 WL 4677697, at *3 (Tenn. Crim. App. Aug. 28, 2013); Clayton Bezuidenhout v. State, No. M2012-0114-CCA-R3-PC, 2013 WL 1965992, at *2 (Tenn. Crim. App. May 13, 2013); Francisco Miquel Jose v. State, No. M2011-00295-CCA-R3-PC, 2012 WL 4479271, at *3 (Tenn. Crim. App. Sept. 28, 2012); Dwayne Jabbar Seales v. State, No. M2011-01151-CCA-R3-PC, 2012 WL 2873381, at *3 (Tenn. Crim. App. July 13, 2012); Ivano Stamegna v. State, No. E2011-00107-CCA-R3-PC, 2011 WL 5971275, at *6-7 (Tenn. Crim. App. Nov. 29, 2011). This court specifically recognized that "lack of knowledge or late discovery of a claim does not make it 'later[-]arising.'" Antonio Angel Onate, 2013 WL 4677697, at *3 (citing Brown v. State, 928 S.W.2d 453, 456 (Tenn. Crim. App. 1996)); see Ivano Stamegna, 2011 WL 5971275, at *6 ("Merely discovering

- 8 -

that a claim exists, or lacking the knowledge that there may be a claim, does not make the claim 'later-arising.'").

The Petitioner's late discovery of his ineffective assistance claim pursuant to Padilla does not make this claim "later-arising." Although the Petitioner was not aware that his sexual battery convictions would negatively impact his immigration status, his ineffective assistance of counsel claim, which stemmed from counsel's failure to inform him of the adverse immigration consequences of his charges, existed when his judgment became final and is not later-arising. See Ricardo Rodriguez v. State, No. M2011-02068-CCA-R3-PC, 2012 WL 4470675, at *7-8 (Tenn. Crim. App. Sept. 27, 2012) (concluding that although the petitioner was unaware of the deportation consequence at the time of his guilty plea, his ineffective assistance of counsel claim existed at the time he entered his plea and was not later-arising), perm. app. denied (Tenn. Mar. 5, 2013). The Petitioner has failed to establish a "later-arising" ground for relief because the alleged attorney misconduct occurred prior to the expiration of the limitations period. Consequently, due process did not require tolling the statute of limitations, and the post-conviction court should have dismissed the petition as untimely.

After briefs were filed in this case, the Petitioner filed supplemental authority, arguing that Lee v. United States, 137 S. Ct. 1958 (2017) was applicable to the present case. At oral argument, the Petitioner claimed that the decision in Lee applied to his case because it involved the equitable tolling of the limitations period. However, our review of Lee, which involved the filing of a motion to vacate under 28 U.S.C. § 2255, shows that it did not involve due process tolling. See Lee, 137 S. Ct. at 1963. Like Padilla, Lee involved an attorney's failure to inform a petitioner of the deportation consequences of his guilty plea; it did not involve a situation, like the one in the present case, in which a petitioner waived his right to a jury trial and proceeded to a bench trial. See id. at 1962-64. Accordingly, we conclude that Lee is not helpful in determining whether the post-conviction court erred in tolling the limitations period in this case. Because the post-conviction court should have dismissed the petition as untimely, this court is deprived of jurisdiction to hear the appeal, and the appeal is dismissed.

Although we have concluded that the post-conviction court erred in tolling the limitations period on due process grounds, we will briefly address the Petitioner's ineffective assistance of counsel claim in the event of further appellate review.

**II. Ineffective Assistance of Counsel.** The Petitioner argues that initial and successor counsel were ineffective under Padilla for failing to advise him of the adverse immigration consequences, including deportation, if convicted of sexual battery at trial. In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient

performance prejudiced the defense. Vaughn v. State, 202 S.W.3d 106, 116 (Tenn. 2006) (citing Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975); Strickland, 466 U.S. at 687). A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Id. at 370 (citing Strickland, 466 U.S. at 697).

In Padilla, the United States Supreme Court specifically recognized, "[A]uthorities of every stripe—including the American Bar Association, criminal defense and public defender organizations, authoritative treatises, and state and city bar publications—universally require defense attorneys to advise as to the risk of deportation consequences for non-citizen clients . . . ." 559 U.S. at 367 (internal quotation marks and citations omitted). It then held that counsel in Padilla was deficient because the consequences of the guilty plea were "succinct, clear, and explicit in defining the removal consequence for Padilla's conviction" and were easily ascertained by "reading the text of the [removal] statute." Id. at 368. However, the court recognized that "[w]hen the law is not succinct and straightforward . . . , a criminal defense attorney need do no more than advise a non-citizen client that pending criminal charges may carry a risk of adverse immigration consequences." Id. at 369.

In this case, it appears that there was no succinct and straightforward answer to whether a conviction for sexual battery would impact the Petitioner's immigration status. See 8 U.S.C. § 1227(a)(2)(A)(i) (stating that any alien who "is convicted of a crime involving moral turpitude committed within five years (or 10 years in the case of an alien provided lawful permanent resident status under section 1255(j) of this title) after the date of admission" and "is convicted of a crime for which a sentence of one year or longer may be imposed . . . is deportable."). Nevertheless, the record clearly shows that neither initial counsel nor successor counsel advised the Petitioner that his charges for sexual battery carried the risk of adverse immigration consequences, in accordance with Padilla.

- 10 -

By failing to inform the Petitioner of this risk, counsels' conduct likely fell "below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369. Accordingly, initial counsel and successor counsel were deficient in their representation of the Petitioner.

However, even if we assume that counsel were deficient, the Petitioner has failed to establish prejudice. The Petitioner contends that if counsel had informed him that a sexual battery conviction would result in deportation and other adverse immigration consequences, he would have pursued a different trial strategy. Specifically, he claims that he would have attempted to get his charges dismissed or to enter a guilty plea to a non-deportable offense and would have demanded a jury trial instead of a bench trial. He also cites to successor counsel's testimony that she would have worked harder to get the Petitioner's case dismissed and would have called witnesses to attack the credibility of the State's witnesses. The State responds that the Petitioner has failed to establish he was prejudiced by counsel's alleged deficiencies. We agree with the State.

Although the Petitioner asserts that he would have worked harder to have his case dismissed and would have attempted to enter a guilty plea to a non-deportable offense, he presented no evidence that additional effort on his part or counsel's part would have changed the outcome of his trial. The prosecutor assigned to the Petitioner's case testified that there was no chance that he would have dismissed all of the sexual battery cases against the Petitioner and that he intended to try the Petitioner on the strongest case against him, which was what occurred. The prosecutor said he chose to try this particular case, as opposed to the other sexual battery cases against the Petitioner, because the victim's credibility was strong and the victim's "version of events was corroborated by the victim's coworker," the victim's mother, and an additional witness who also made complaints against the Petitioner. We conclude that because the Petitioner has failed to present any evidence showing how additional effort would have changed the outcome of trial, he is not entitled to relief on this ground.

The Petitioner also claims that he would have pursued a jury trial rather than a bench trial had he known of the adverse immigration consequences of his convictions. As to this claim, we also note that the Petitioner presented no proof that the outcome of his case would have been different had he proceeded to a jury trial. See Strickland, 466 U.S. at 694-95 (stating that when making a determination as to whether specific errors resulted in prejudice, "a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law" and recognizing that an assessment of prejudice "should not depend on the idiosyncra[s]ies of the particular decisionmaker, such as unusual propensities toward harshness or leniency"); Lee, 137 S. Ct. at 1967 (acknowledging the presumption of reliability applied to judicial proceedings). Pursuant to Tennessee Rule of Criminal Procedure 23, a

defendant is entitled to waive his right to a jury trial. At oral argument, post-conviction counsel acknowledged that the Petitioner had opted for a bench trial rather than a jury trial because the judge assigned to his case seemed more liberal toward the defense. At the post-conviction hearing, the prosecutor testified that the Petitioner's immigration status, which was irrelevant, would not have been admissible at a jury trial, further undercutting the Petitioner's assertion that a jury trial would have resulted in a more favorable conviction or dismissal. Because the Petitioner has failed to present any evidence that he suffered prejudice from his personal decision to proceed to a bench trial, he is not entitled to relief on this ground.

Next, the Petitioner asserts that his defense was prejudiced because successor counsel admitted that she would have presented witnesses attacking the credibility of the State's witnesses had she been aware of the negative immigration consequences of his convictions. "When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). The presentation of the witness at the post-conviction hearing is typically the only way for the petitioner to establish that failure to "call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner." Id. Neither the post-conviction court nor this court may speculate on "what a witness's testimony might have been if introduced by defense counsel." Id. Because the Petitioner failed to present any witnesses who could have attacked the credibility of the State's witnesses, we are unable to evaluate whether successor counsel's failure to call these witnesses prejudiced the Petitioner's case. Accordingly, he is not entitled to relief on this ground.

Finally, the Petitioner asserts that even if counsels' deficiencies do not amount to actual prejudice, counsels' deficient performance constitutes "presumptive prejudice via a structural defect." "Structural constitutional errors are errors that compromise the integrity of the judicial process itself." State v. Rodriguez, 254 S.W.3d 361, 371 (Tenn. 2008) (citing State v. Garrison, 40 S.W.3d 426, 433 n.9 (Tenn. 2000)). Such errors "deprive defendants of 'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no [such] criminal punishment may be regarded as fundamentally fair.'" Momon v. State, 18 S.W.3d 152, 165 (Tenn. 1999) (quoting Neder v. United States, 527 U.S. 1, 8-9 (1999)). Structural constitutional errors are not subject to harmless error review and require automatic reversal when they occur. Rodriguez, 254 S.W.3d at 371 (citing Cottingham v. Cottingham, 193 S.W.3d 531, 537 (Tenn. 2006); State v. Scott, 33 S.W.3d 746, 755 n.6 (Tenn. 2000)). "Only a very limited class of errors have been found to be 'structural' and subject to automatic reversal." Momon, 18 S.W.3d at 165. "Examples of structural constitutional errors include the complete denial of the right to counsel, racial

discrimination in the selection of a grand jury, denial of the right of self-representation at trial, and denial of the right to a trial by jury." Rodriguez, 254 S.W.3d at 371 (citing Momon, 18 S.W.3d at 165-66). None of these structural constitutional errors are present in this case. The errors alleged by the Petitioner do not amount to a complete denial of the right to counsel, and the Petitioner's personal decision to proceed to a bench trial does not constitute a denial of the right to a trial by jury. Accordingly, we conclude there is no evidence of a structural error requiring reversal of the Petitioner's convictions.

## CONCLUSION

Because the post-conviction court erred in determining that that due process tolled the one-year statute of limitations for filing a petition for post-conviction relief, this court is deprived of jurisdiction to hear the appeal, and the appeal is dismissed.

_____
CAMILLE R. MCMULLEN, JUDGE